**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR02-0060-LRR |
| | No. C05-0009-LRR |
| vs. | |
| | **ORDER** |
| CURTIS SWAYZE, | |
| Defendant. | |

*TABLE OF CONTENTS*

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     RELEVANT BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.    LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

        A.    Standards Applicable to Motion Pursuant to 28 U.S.C. § 2255 . . . . **15**
        B.    Standards Applicable to Sixth Amendment . . . . . . . . . . . . . . . . . **17**

IV.     ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

        A.    Review of Motion for Ruling . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
        B.    Review of Motion to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
        C.    Review of Motion for an Evidentiary Hearing . . . . . . . . . . . . . . **21**
        D.    Review of Ineffective Assistance of Counsel Claims . . . . . . . . . . . **22**
              1.    Ineffective Assistance of Trial Counsel . . . . . . . . . . . . . . . **22**
              2.    Ineffective Assistance of Appellate Counsel: Improper
                    Admission of a Laboratory Report . . . . . . . . . . . . . . . . . . **27**
              3.    Ineffective Assistance of Appellate Counsel:
                    Inadequate Representation during Plea Negotiations by Trial
                    Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**
        E.    Certificate of Appealability . . . . . . . . . . . . . . . . . . . . . . . . . . . **30**

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**

## I. INTRODUCTION

This matter comes before the court on the defendant's motion to vacate, set aside or correct his sentence (docket no. 105). The defendant filed such motion pursuant to 28 U.S.C. § 2255.[1] Also before the court is the defendant's motion for an evidentiary hearing (docket no. 106), motion to amend (docket no. 113) and motion for ruling (docket no. 121). For the following reasons, the defendant's motion for ruling shall be granted, and the defendant's motion to amend, motion for an evidentiary hearing and motion pursuant to 28 U.S.C. § 2255 shall be denied. A certificate of appealability also shall be denied.

## II. RELEVANT BACKGROUND

On April 10, 1977, the defendant committed burglary of a storehouse in Mississippi. On April 20, 1977, the defendant escaped from custody and committed armed robbery in Mississippi. On April 21, 1977, the defendant pled guilty to burglary and armed robbery. On the same date, the defendant received a 4-year sentence for the burglary conviction and a 10-year sentence for the armed robbery conviction. The Mississippi state court ordered those sentences to run concurrently. On December 2, 1986, the defendant discharged his sentence. Officials released the defendant the same date.

---

[1] If a prisoner is in custody pursuant to a sentence imposed by a federal court and such prisoner claims "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the prisoner] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255; *see also Daniels v. United States*, 532 U.S. 374, 377, 121 S. Ct. 1578, 149 L. Ed. 2d 590 (2001).

In 1987, the defendant committed armed robbery. The defendant subsequently pled guilty to armed robbery in a Louisiana state court, and the defendant received a 99-year sentence of hard labor without the benefit of parole, probation or suspension of his sentence. Following an appeal and reversal of his conviction, the Louisiana state court resentenced the defendant to a 25-year sentence. *See State v. Swayze*, 554, So.2d 249 (La. App. 1989). On July 29, 2001, officials paroled the defendant.

On April 12, 2002, the government made an inquiry that revealed information pertaining to the Mississippi convictions and the Louisiana conviction. Specifically, the government learned that the defendant received a 4-year sentence for the 1977 burglary conviction in Mississippi, a 10-year sentence for the 1977 armed robbery conviction in Mississippi and a 99-year sentence for the 1988 armed robbery conviction in Louisiana. The April 12, 2002 inquiry did not provide any release dates.

On or about June 25, 2002, the Circuit Clerk of the State of Mississippi provided the government with certified copies of the charges, the pleas and the sentences that pertain to the defendant's Mississippi convictions.

On August 21, 2002, the grand jury returned and the government filed a two-count indictment against the defendant. Such indictment charged the defendant with controlled substance offenses that occurred on December 20, 2001. Specifically, count 1 charged that the defendant did knowingly and intentionally possess with intent to distribute approximately 10.72 grams of a mixture or substance containing a detectable amount of cocaine base, commonly known as "crack" cocaine, a Schedule II controlled substance.[2] And, count 2 charged that the defendant did knowingly and intentionally possess with

---

[2] The conduct charged in count 1 of the indictment is in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B).

intent to distribute approximately 2.03 grams of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.[3]  On October 3, 2002, the court appointed Assistant Federal Public Defender JoAnne M. Lilledahl to represent the defendant.[4]

On October 1, 2002, the government sent a letter to the defendant.  The letter notes that, pursuant to Federal Rule of Criminal Procedure 16, the government deemed it appropriate to provide the defendant copies of the defendant's criminal record, certified felony convictions and a laboratory report.  The copies of the defendant's criminal record and certified felony convictions contained information about the defendant's 1977 burglary conviction in Mississippi, 1977 armed robbery conviction in Mississippi and 1988 armed robbery conviction in Louisiana.

Along with the letter and copies, the government enclosed a proposed plea agreement.  In exchange for pleading guilty to count 1 of the indictment, the government offered to dismiss count 2 of the indictment.  The plea agreement informed the defendant that pleading guilty to count 1 subjected him to at least 5 years and up to 40 years imprisonment, and it required the defendant to stipulate to specific facts.  The plea agreement also included several stipulations regarding the drug quantity sentencing guidelines, the acceptance of responsibility sentencing guidelines and the career offender sentencing guidelines.  Concerning the career offender guidelines, the plea agreement provided:

---

[3] The conduct charged in count 2 of the indictment is in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C).

[4] Ms. Lilledahl represented the defendant from October 3, 2002 to January 22, 2003.

> The parties stipulate and agree that defendant qualifies as a "career offender," as that term is defined in the U.S. Sentencing Guidelines. As such, the defendant will be subject to enhanced imprisonment. A person is a "career offender" under USSG [§4B1.1] if: (1) defendant was at least eighteen years old at the time of the present offense, (2) the present offense is a felony that is either a crime of violence or a controlled substance offense, and (3) defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

> Defendant stipulates and agrees that he has two qualifying crimes of violence, specifically, defendant was convicted of: (1) Burglary of a Storehouse on April 10, 1977, in the Adams County Circuit Court of Mississippi, and (2) three counts of Armed Robbery on February 2, 1988, in the Seventh Judicial District Court of, Parish of Concordia, Louisiana.

An additional inquiry made on October 16, 2002 revealed essentially the same information pertaining to the Mississippi convictions and the Louisiana conviction, that is, the criminal history report indicated that the defendant received a 4-year sentence for the 1977 burglary conviction in Mississippi, a 10-year sentence for the 1977 armed robbery conviction in Mississippi, a 99-year sentence for the 1988 armed robbery conviction in Louisiana and no release dates for any of the convictions. It did not indicate that the defendant ultimately received a 25-year sentence for the 1988 armed robbery conviction in Louisiana. On November 1, 2002, the government sent the defendant a letter and a copy of the defendant's criminal history report.

On December 10, 2002, the defendant filed a motion to suppress. On December 16, 2002, Ms. Lilledahl wrote to the government to propose a counter-offer to the proposed plea agreement. In her letter, she stated the following:

> As you know, Mr. Swayze is on parole from the state of Louisiana. If his parole is revoked, he is facing a [12.5-year]

sentence in Louisiana. As we have discussed, Mr. Swayze is quite concerned about having to serve a federal sentence and then a consecutive state sentence. He is willing to plead guilty to the powder cocaine charge and stipulate that he violated the conditions of his parole if he can go directly to Louisiana and serve his sentence there. Because he is a career offender, he is looking at a [12.5-year] sentence both federally and in Louisiana. Essentially he would serve his sentence in a Louisiana state facility rather than a federal facility. By doing this, however, he would be assured that he would not be facing a consecutive [12.5-year] sentence after serving his federal sentence.

On December 23, 2002, Ms. Lilledahl wrote again to propose a counter-offer to the proposed plea agreement. In her letter, she stated the following:

> As we have discussed, Mr. Swayze is on parole from the state of Louisiana. We have now confirmed with Greg Smith, who is in charge of the interstate compact for the Louisiana Parole Board that if Mr. Swayze is convicted in federal court the state of Louisiana will place a detainer on him while he is in the Bureau of Prisons. Once his federal time has been completed, Mr. Swayze will be transferred back to the state of Louisiana to serve his state sentence. Mr. Smith tells us there are no exceptions to this policy. Therefore, if Mr. Swayze is convicted in federal court and then his parole is revoked, he will be facing a [25-year] sentence between the federal sentence and the Louisiana sentence.

> As we have discussed, Mr. Swayze is quite concerned about having to serve a federal sentence and then a consecutive state sentence. He is willing to plead guilty to the powder cocaine charge and stipulate that he violated the conditions of his parole if he can go directly to Louisiana and serve his sentence there. Because he is a career offender, he is looking at a [12.5-year] sentence both federally and in Louisiana. Essentially he would serve his sentence in a Louisiana state facility rather than a federal facility. By doing this, however,

> he would be assured that he would not be facing a consecutive
> 12.5 year sentence after serving his federal sentence.

On December 30, 2002, the court held a hearing on the defendant's motion to suppress. On January 3, 2003, the court denied the defendant's motion to suppress. The defendant rejected the government's proposed plea agreement,[5] and the government rejected the defendant's proposed counter-offer.[6]

On January 7, 2003, the defendant's jury trial commenced. On January 8, 2003, the jury found the defendant guilty of both counts contained in the indictment.[7]

On January 15, 2003, the defendant filed a motion for a new trial and a motion for judgment of acquittal. In both motions, the defendant argued that no direct evidence

---

[5] Under the government's proposed plea agreement, the defendant would have pled guilty to count 1 and stipulated to being a career offender. Pursuant to USSG §4B1.1, the applicable offense level would have been 34. After making an adjustment from USSG §3E1.1, the defendant's total offense level would have been 31. Pursuant to USSG §4B1.1, the defendant's criminal history category would have been VI. Given a total offense level of 31 and a criminal history category of VI, the sentencing range would have been 188 to 235 months imprisonment.

[6] Under the defendant's proposed counter-offer, the defendant would have pled guilty to count 2 and stipulated to being a career offender. Pursuant to USSG §4B1.1, the applicable offense level would have been 29. After making an adjustment from USSG §3E1.1, the defendant's total offense level would have been 26. Pursuant to USSG §4B1.1, the defendant's criminal history category would have been VI. Given a total offense level of 26 and a criminal history category of VI, the sentencing range would have been 120 to 150 months imprisonment.

[7] The government's resistance contains a detailed and accurate statement of the evidence and testimony that the jury considered during the defendant's trial. In addition, the court thoroughly discussed the facts in its order dated November 18, 2003. *See United States v. Swayze*, 2003 U.S. Dist. LEXIS 20974, 2003 WL 22741007 (N.D. Iowa 2003). Rather than restate the facts or the evidence and testimony in this order, the court deems it appropriate to rely on the government's resistance and its prior order.

connected him to the cocaine that officers discovered in the toilet of a public bathroom. On January 22, 2003, Alfred E. Willett filed an appearance on behalf of the defendant.[8] On January 23, 2003, the government resisted the defendant's motion for a new trial and motion for judgment of acquittal. On February 20, 2003, officials revoked the defendant's parole and ordered him to serve the remainder of his Louisiana sentence because he committed the offenses contained in the indictment while on parole. On July 28, 2003, the court denied the defendant's motion for a new trial and motion for judgment of acquittal.

On August 12, 2003, the government filed a sentencing memorandum in response to the pre-sentence investigation report that probation filed on June 25, 2003. In its sentencing memorandum, the government, among other things, notified the court that it believed the court should utilize criminal history category VI, rather than criminal history category III, because the defendant's assessed criminal history did not accurately reflect his criminal conduct over the last 25-years and a high likelihood of recidivism existed.[9] To support its position, the government relied on USSG §4A1.3 and USSG §5K2.0. On September 18, 2003, the defendant filed a sentencing memorandum. Such memorandum resisted the government's request for an upward departure based on understated criminal history.

On the same date, the defendant filed a second motion for a new trial. In such motion, the defendant argued newly discovered polygraph results showed one of his witnesses testified truthfully, one of the government's witnesses did not testify truthfully and, without the testimony of the government's witness, he would have been acquitted.

---

[8] Mr. Willett represented the defendant from January 22, 2003 through the defendant's direct appeal.

[9] Based on a total offense level of 26 and a criminal history category of VI, the applicable guideline range would be 120 to 150 months imprisonment.

On September 22, 2003, probation filed another pre-sentence investigation report. On September 24, 2003, the government resisted the defendant's second motion for a new trial. On September 25, 2003, the court held a hearing on the defendant's second motion for a new trial. On November 12, 2003, the defendant filed a supplemental sentencing memorandum. On November 19, 2003, the court denied the defendant's second motion for a new trial.

On November 19, 2003, the court held a sentencing hearing. At such hearing, neither party objected to the total offense level or the criminal history category that probation calculated,[10] and the parties only argued whether the court should grant a departure. With respect to the government's request for an upward departure based on understated criminal history, the government argued:

> United States Sentencing Guideline 4A1.3 provides that if the criminal history category does not adequately represent the criminal history of the defendant, then the court has the authority to depart. Also, under 5K2.0, you have the authority to depart when the case is outside the heartland of cases. First of all, we would rely on the case *United States v. Chesborough*, which is a 2003 Eighth Circuit case. The court there stated that "We have previously held convictions excluded from a defendant's criminal history score because of their age may be the basis of an upward departure based on understatement of criminal history." In this case, we believe that the court should depart upward for the two convictions that were not counted due to their age. In this case, [a 1977

---

[10] The pre-sentence investigation report determined that a total offense level of 26 and a criminal history category of III applied to the defendant, and, therefore, the applicable guideline range would be 78 to 97 months imprisonment. Under USSG §4A1.2(e), the pre-sentence investigation report did not assess any criminal history points for the 1977 burglary conviction and 1977 armed robbery conviction because the defendant was not incarcerated during the applicable 15-year period.

burglary conviction and a 1977 armed robbery conviction were not counted] because they were—the defendant was released from prison [15-years] and [18-days] prior to the instant offense. He was released on December 2 of 1986, and the instant offense occurred on December 20 of 2001. Therefore, the difference in his sentencing range is between 184 and 230[11] months just based on the fact that he was in prison eight days—eighteen days, excuse me, longer than the guidelines provide—we believe that the commission did not intend for such a result. It's just a huge discrepancy—[. . .]

In response, the defendant argued:

Mr. Swayze is looking at 78 to 97 months based upon the current guideline range. [. . .] Now then, from other sentencings I have had with this court, you realize one thing based upon Eighth Circuit law, any sentence this court imposes will be imposed consecutively to his state of Louisiana parole revocation. 78 to 97 months in and of itself—whatever the court imposes within that range will be imposed consecutive to a [12.5-year] sentence. I do not believe there's a likelihood of recidivism. Mr. Swayze is slightly younger man than myself, but suffice it to say, he will be a man in his middle-aged years when he is released from his federal and state sentences, and I think the likelihood of recidivism, at least my opinion is, is there is none.

Now, then, what this boils down to, I believe, quite frankly, is the fact that, my understanding of the history of this case from speaking with my client, from speaking with Assistant Federal Defender Lilledahl, is that there was always a belief that my client was a career offender. That may in part have driven my client's decision to litigate this matter as opposed to

---

[11] The difference between 262 to 327 months imprisonment, that is, total offense level 26 and criminal history category VI, and 78 to 97 months imprisonment, that is, total offense level 26 and criminal history category III, is 184 to 230 months imprisonment.

resolve it with plea negotiations, but there was always a belief that he was.

After the verdict, there's a realization or a learning, if you will, that my client's not a career offender. And as Ms. Baumann points out, he's not a career offender by eighteen days. This is the government's method to get back to that. [. . .] I want to point out two things for the record, Your Honor. I want to point out clearly that [the 1977 burglary conviction and the 1977 armed robbery conviction] are beyond the [15]-year time period that the court would utilize to count prior offenses. Now, then, Ms. Baumann cites the *Chesborough* case that we can do this. The other thing I want to point out to the court is Ms. Baumann takes exception, I believe, to [other conduct that did not get included when calculating the defendant's criminal history]. Now, I think the—not only 4A1.3, but the guide—but the Eighth Circuit case law is very clear, that you cannot use an arrest record to bootstrap up, if you will, a motion for upward departure, and I would ask the court respectfully to not consider [that conduct].

Judge, [. . .] the government thought he was a career offender. He's not. Now they want to use two [15]-year-old-plus convictions, when this man was eighteen and a drug addict, to get there, based upon the fact that, you know, he has this likelihood of recidivism. I would respectfully suggest the state of Louisiana's sentence that this man must serve is going to mitigate against any need for the court to depart upward. A 78 to 97 month sentence in and of itself is a significant sentence, especially when in the federal system he must serve 85 percent of that time. When you couple that with the idea that Mr. Swayze will serve that Louisiana sentence, at least in my mind, Your Honor, I don't see the court's need to depart upward. [. . .] If this court disagrees with me and says, "Mr. Willett, I'm going to depart upward," I think the appropriate ceiling is a criminal history category five, not a six, not 120 to 150 months, but rather, 110 to 137 months.

The court denied the government's request for an upward departure and indicated that it would take into consideration all of the facts and circumstances, including the defendant's criminal history, when sentencing the defendant within the applicable guideline range. During his allocution, the defendant stated: "I still maintain that I'm innocent, Judge, but I don't hold a grudge. I feel like I'll still be vindicated someday." The court sentenced the defendant to 97 months imprisonment (97 month term on each count and terms to run concurrently) and 4 years supervised release (4 years on count 1, 3 years on count 2 and terms to run concurrently).[12] The court ordered the defendant's sentences to run consecutively to the undischarged state term of imprisonment imposed in Louisiana.[13] On November 19, 2003, judgment entered against the defendant.

On November 24, 2003, the defendant filed an appeal. On appeal, the defendant challenged the sufficiency of the evidence to support his convictions and the decision not to grant a new trial based on newly discovered polygraph results that showed one of his witnesses testified truthfully. On July 26, 2004, the Eighth Circuit Court of Appeals affirmed the defendant's convictions and resulting sentence. *See United States v. Swayze*, 378 F.3d 834 (8th Cir. 2004).

---

[12] The court sentenced the defendant based on a total offense level of 26 and a criminal history category of III. Before reaching the total offense level of 26, the court determined: 1) the base offense level should be 26 pursuant to USSG §2D1.1; and 2) no adjustments should be made to the base offense level. Utilizing USSG §4A1.1, the court determined the defendant's criminal history category to be III. The defendant's total offense level and criminal history category established a guideline range of 78 to 97 months imprisonment.

[13] The defendant acknowledged, in his sentencing memorandum and at the sentencing hearing, that, under USSG §5G1.3, his sentence should run consecutively to the prior undischarged term of imprisonment. *See United States v. Caldwell*, 339 F.3d 680, 681 (8th Cir. 2003).

On January 12, 2005, the defendant filed the instant motion pursuant to 28 U.S.C. § 2255 and motion for an evidentiary hearing. In his 28 U.S.C. § 2255 motion, the defendant challenges his conviction and resulting sentence on two grounds. Specifically, the defendant asserts: 1) his trial counsel and appellate counsel provided ineffective assistance in violation of the Sixth Amendment; and 2) his sentence is in violation of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). With respect to the former assertion, the defendant argues: 1) trial counsel provided ineffective assistance during plea negotiations; 2) appellate counsel provided ineffective assistance when he failed to assert improper admission of a laboratory report; and 3) appellate counsel provided ineffective assistance when he failed to assert trial counsel provided inadequate representation during plea negotiations. On April 27, 2005, the court conducted a preliminary review of the defendant's 28 U.S.C. § 2255 motion pursuant to Rule 4 of the Rules Governing 2255 Proceedings, dismissed the defendant's claim which relied on *Blakely v. Washington*[14] and ordered the government to

---

[14] The court noted in its April 27, 2005 order that the Eighth Circuit Court of Appeals had not addressed the impact of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). The Eighth Circuit Court of Appeals, however, has now determined "the 'new rule' announced in *Booker* does not apply to criminal convictions that became final before the rule was announced, and thus does not benefit [defendants] in collateral proceedings." *Never Misses A Shot v. United States*, 413 F.3d 781, 783-84 (8th Cir. 2005). Moreover, when the court utilized USSG §4A1.1(d) to add two points and USSG §4A1.1(e) to add one point to the defendant's criminal history category, no unlawful enhancement occurred. *See Booker*, 543 U.S. at 244-45, 125 S. Ct. at 756, 160 L. Ed. 2d at 650 (concluding the Sixth Amendment is violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant) (applying its decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v.*

(continued...)

respond to the claim which asserted counsel provided ineffective assistance. On May 31, 2005, the government filed a resistance to the defendant's 28 U.S.C. § 2255 motion. On June 13, 2005, the defendant filed a reply to the government's resistance.

On November 25, 2005, the defendant filed the instant motion to amend. In such motion, the defendant raises another claim regarding ineffective assistance of counsel. Specifically, he contends that trial counsel did not properly admit into evidence a police report, and, consequently, the jury could not review it while deliberating. He also asks the court to compel production of particular documents, including grand jury materials, a police report and the complaint and report completed by an officer. The government did not resist the motion to amend, and the court did not order the government to file a resistance.

On May 15, 2006, the court entered an order that directed the government to expand the record, that is, submit additional materials relating to the action or steps that Ms. Lilledahl took to determine whether the defendant's prior convictions met the requirements of USSG §4A1.2(e) and/or the requirements of USSG §4B1.1. On May 31, 2006, the government responded by submitting the October 1, 2002 letter and November 1, 2002 letter that it sent to the defendant. On June 8, 2006, the court clarified its order dated May 15, 2006 and directed the government to respond. On June 15, 2006, the government complied with the court's order and submitted an affidavit by Ms. Lilledahl. Such affidavit, among other things, outlines the steps that she took to determine whether the defendant's prior felony convictions met the requirements of USSG §4A1.2(e) and the requirements of USSG §4B1.1. Specifically, the affidavit, in pertinent part, states:

---

[14](...continued)
*Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), to the Federal Sentencing Guidelines).

(1) In my representation of Mr. Swayze, I reviewed his discovery file numerous times. I reviewed Mr. Swayze's criminal history printouts and the certified copies of his prior felony convictions, including those associated with his 1977 Burglary of a Storehouse conviction, his 1977 Armed Robbery conviction, and his [1988] Armed Robbery conviction. The government sent me these documents, which I reviewed personally and with Mr. Swayze. My investigator also met with Mr. Swayze.

(2) I also spoke with Mr. Swayze regarding these convictions. It was my understanding, after speaking with Mr. Swayze, that he had served nearly the entire ten year sentence which he received for the 1977 Armed Robbery conviction. Because of this, and the records I had reviewed, it was my understanding Mr. Swayze was a career offender, as both his 1977 Armed Robbery conviction and his [1988] Armed Robbery conviction met both the definition of a "crime of violence" under United States Sentencing Guideline §4B1.2 and were within the time limits of United States Sentencing Guideline §4A1.2(e).

On June 16, 2006 and June 29, 2006, the defendant responded to the additional information provided by the government on May 31, 2006 and June 15, 2006.

On March 10, 2008, the defendant filed the instant motion for ruling on his 28 U.S.C. § 2255 motion. In such motion, he complains about the delay in addressing his motion under 28 U.S.C. § 2255.

The court now turns to consider the defendant's motion for ruling, motion to amend, motion for an evidentiary hearing and motion pursuant to 28 U.S.C. § 2255.

### III. LEGAL STANDARDS

#### A. Standards Applicable to Motion Pursuant to 28 U.S.C. § 2255

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. To obtain relief

pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962) (citing 28 U.S.C. § 2255).

Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Rather, 28 U.S.C. § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.") (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987)). A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) (making clear a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "[a]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (internal quotation marks and citation omitted).

In addition, defendants ordinarily are precluded from asserting claims they failed to raise on direct appeal. *See McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). "A defendant who has procedurally defaulted a claim by failing to raise it on direct review

may raise the claim in a [28 U.S.C. §] 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)); *see also Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the [defendant] shows cause and prejudice."). "'[C]ause' under the cause and prejudice test must be something *external* to the [defendant], something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (emphasis in original). If a defendant fails to show cause, a court need not consider whether actual prejudice exists. *McCleskey v. Zant*, 499 U.S. 467, 501, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991). Actual innocence under the actual innocence test "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623-24; *see also McNeal*, 249 F.3d at 749 ("[A] defendant must show factual innocence, not simply legal insufficiency of evidence to support a conviction.").[15]

### B.  Standards Applicable to Sixth Amendment

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., amend. VI. Furthermore, there is a constitutional right to effective assistance of counsel on direct appeal. *Evitts v.*

---

[15] The procedural default rule applies to a conviction obtained through trial or through the entry of a guilty plea. *See United States v. Cain*, 134 F.3d 1345, 1352 (8th Cir. 1998); *Walker v. United States*, 115 F.3d 603, 605 (8th Cir. 1997); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997); *Thomas v. United States*, 112 F.3d 365, 366 (8th Cir. 1997); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).

*Lucey*, 469 U.S. 387, 393-95, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Douglas v. California*, 372 U.S. 353, 356-57, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963).

The Sixth Amendment right to effective counsel is clearly established. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Supreme Court explained that a violation of that right has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687; *see also Williams*, 529 U.S. at 390 (reasserting *Strickland* standard). Thus, *Strickland* requires a showing of both deficient performance and prejudice. However, "a court deciding an ineffective assistance claim [need not] address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("[A court] need not address the reasonableness of the attorney's behavior if the [defendant] cannot prove prejudice.").

To establish unreasonably deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is a strong presumption of competence and reasonable professional judgment. *Id.*; *see also United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) (operating on the

"strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (quoting *Strickland*, 466 U.S. at 689)); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (stating that broad latitude to make strategic and tactical choices regarding the appropriate action to take or refrain from taking is afforded when acting in a representative capacity) (citing *Strickland*, 466 U.S. at 694). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In other words, "the question is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." *Id*. at 695. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id*.

## IV. ANALYSIS

### A. Review of Motion for Ruling

In the motion for ruling, the defendant correctly points out that a substantial amount of time has passed since the date he filed his 28 U.S.C. § 2255 motion. Accordingly, the defendant's motion for ruling shall be granted.

### B. Review of Motion to Amend

The additional claims that are raised in the defendant's motion to amend are untimely. Under the Antiterrorism and Effective Death Penalty Act of 1996, a 28 U.S.C.

§ 2255 motion must be filed within one year of the date the conviction becomes final, except in circumstances not present here. *See* 28 U.S.C. § 2255.[16] Here, the defendant's conviction became "final" on October 24, 2004–the last day he could have timely filed a petition for a writ of certiorari. *See Clay v. United States*, 537 U.S. 522, 527, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003) ("Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Although he timely filed his original 28 U.S.C. § 2255 motion, the defendant did not file the motion to amend before October 24, 2005, which is the last date he could have timely filed an amendment to his 28 U.S.C. § 2255 motion. *See* 28 U.S.C. § 2255. Consequently, any amendment would have to sufficiently relate back to the defendant's original 28 U.S.C. § 2255 motion. *See*

---

[16] A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

*United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (concluding an otherwise untimely amendment to a 28 U.S.C. § 2255 motion does not relate back to a timely filed motion when the original claims are distinctly separate from the claims in the amendment); *see also Mandacina v. United States*, 328 F.3d 995, 999-1000 (8th Cir. 2003) (citing *Craycraft*, 167 F.3d at 457); *Moore v. United States*, 173 F.3d 1131, 1135 (8th Cir. 1999) (discussing *Craycraft*, 167 F.3d at 456-57).   Because the defendant wants to introduce entirely new claims or amendments which do not sufficiently relate back to his original claims, the defendant's motion to amend shall be denied.   Further, the court declines to expand the record as the defendant requests in his motion to amend.

## C.  Review of Motion for an Evidentiary Hearing

With respect to the defendant's motion for an evidentiary hearing, a district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255.  *See United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986).  In exercising that discretion, the district court must determine whether the alleged facts, if true, entitle the defendant to relief.  *See Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996).  "Accordingly, [a district court may summarily dismiss a motion brought under 28 U.S.C. § 2255 without an evidentiary hearing] if (1) the . . . allegations, accepted as true, would not entitle the [defendant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995) (citations omitted); *see also Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (stating that an evidentiary hearing is unnecessary where allegations, even if true, do not warrant relief or allegations cannot be accepted as true because they are contradicted by the record or lack factual evidence and rely on conclusive statements); *United States v. Hester*, 489 F.2d 48, 50 (8th Cir. 1973) (stating that no evidentiary

hearing is necessary where the files and records of the case demonstrate that relief is unavailable or where the motion is based on a question of law). Stated differently, a 28 U.S.C. § 2255 motion can be dismissed without a hearing where "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also Standing Bear v. United States*, 68 F.3d 271, 272 (8th Cir. 1995) (per curiam).

The court's review of the record leads it to conclude that it is able to resolve the defendant's claims from the record. Thus, there is no need for an evidentiary hearing. *See Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993) (holding "[a]ll of the information that the court needed to make its decision with regard to [the defendant's] claims was included in the record . . . ." and, therefore, the court "was not required to hold an evidentiary hearing") (citing Rule Governing Section 2255 Proceedings 8(a) and *United States v. Raddatz*, 447 U.S. 667, 674, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980)). The evidence of record conclusively demonstrates that the defendant is not entitled to the relief sought. Specifically, the record indicates the defendant's ineffective assistance of counsel claims are without merit. As such, the court finds that there is no need for an evidentiary hearing, and the defendant's motion for an evidentiary hearing shall be denied.

### D. Review of Ineffective Assistance of Counsel Claims

#### 1. Ineffective Assistance of Trial Counsel

The defendant claims that trial counsel provided ineffective assistance when she failed to properly negotiate during plea negotiations. He believes trial counsel should have taken steps to determine that he did not qualify as a career offender and should have proposed a counter-offer that did not include a stipulation regarding his status as a career offender. In response, the government argues such claim must fail for lack of proof to satisfy the two-prong test established in *Strickland*. Specifically, the government contends that trial counsel did not act unreasonably when she calculated the defendant's criminal

history category and classified the defendant as a career offender during plea negotiations. Further, the government contends that trial counsel's conduct did not prejudice the defendant.

The court concludes that counsel's performance did not fall below a professional standard of reasonableness. As the record establishes, both parties proceeded under the mistaken understanding that the defendant qualified as a career offender under USSG §4B1.1. When reaching such understanding, trial counsel relied on the defendant's statement that he had served nearly the entire sentence for the 1977 armed robbery conviction,[17] and she relied on the criminal history documents that the government sent on October 1, 1002 and November 1, 2002.[18] Nothing in the criminal history documents indicates that the defendant completed his sentence for the 1977 armed robbery conviction on December 2, 1986, and it is appropriate for trial counsel to rely on the defendant's assertions regarding the amount of time he served for the 1977 armed robbery conviction.

Further, it is clear that, on December 16, 2002 and December 23, 2002, trial counsel attempted to negotiate a plea agreement on behalf of the defendant. In response to the government's October and November of 2002 correspondence which offered to dismiss count 2 in exchange for a plea of guilty on count 1, the defendant countered by:

---

[17] For the 1977 armed robbery conviction, the defendant served nearly 9 years and 8 months in prison, that is, he spent time in prison from April 21, 1977 to December 2, 1986.

[18] The court notes that, despite the government's repeated reliance on the 1977 burglary conviction or the conviction that correlated with a 4-year term of imprisonment, trial counsel determined that the 1977 armed robbery conviction or the conviction that correlated with a 10-year term of imprisonment impacted any determination under USSG §4B1.1. The 1977 burglary conviction clearly did not meet the requirements of USSG §4A1.2(e).

(1) asking the government to allow him to plead guilty to count 2 because he wanted to be sentenced from 120 to 150 months imprisonment rather than 188 to 235 months imprisonment and (2) asking if he could serve his sentence in the Louisiana Department of Corrections because he did not want to serve a consecutive sentence after officials revoke his parole on the 1988 armed robbery conviction. Clearly, before trial commenced or January 7, 2003, the parties never reached an agreement as to: (1) the count or counts that the defendant should enter a guilty plea; (2) the length of the defendant's sentence; (3) the consecutive or concurrent nature of the instant sentence in light of the sentence on the defendant's 1988 armed robbery conviction; (4) the place where the defendant would serve his sentences; and (5) the appropriate facility, that is, the Bureau of Prisons or the Louisiana Department of Corrections. *See United States v. Ledezma-Rodriguez*, 423 F.3d 830, 837 (8th Cir. 2005) (citing *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996), for the proposition that there must be a meeting of the minds on all of the essential terms that are contained in the plea agreement).

Moreover, any assertion by the defendant that he told trial counsel that he did not qualify as a career offender and that he would plead guilty if he did not have to stipulate to being a career offender is belied by the record. At no time during pre-trial proceedings, during trial or on appeal did the defendant convey that he wanted to plead guilty and would do so without a plea agreement. Prior to filing the motion under 28 U.S.C. § 2255, the efforts undertaken by defendant concerned the effect that a federal conviction would have on the defendant's parole for the 1988 armed robbery conviction in Louisiana. The defendant made clear numerous times that he did not want to serve approximately 25 years in prison, that is, he did not want to serve a federal sentence and then a state sentence for violating the terms and conditions of his parole on the 1988 armed robbery conviction. Given the record regarding the defendant's position prior to proceeding to trial and during

24

direct appeal, the court finds that the defendant's ineffective assistance of counsel claim is unsustainable.

With respect to the first prong of the applicable standard, trial counsel attempted to discover within a relatively short time frame the facts that effected the defendant's sentencing, analyzed the facts in light of USSG §4B1.1 and USSG §4A1.2 and sought to enter into a favorable plea agreement with the government after discussing the facts and law with the defendant. The record indicates that trial counsel tried to further the defendant's interest in not having to serve two sentences, and, ultimately, she deemed it appropriate to pursue such interest by proceeding to trial. Based on the record, the court is unable to conclude that counsel's failure to realize that the defendant's 1977 armed robbery conviction failed to meet the requirements of USSG §4A1.2(e) constitutes deficient performance. *Strickland*, 466 U.S. at 689; *see also McMann v. Richardson*, 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (stating that a defense attorney's good faith and mistaken evaluation of or prediction about the relative advantages of pleading guilty does not necessarily constitute ineffective assistance); *Barnes*, 83 F.3d at 939-40 (explaining what constitutes effective assistance when a defendant is considering a guilty plea and acknowledging that, although gross mis-characterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, it is not proof of a deficiency).

In addition, the court finds trial counsel's performance did not prejudice the defendant's defense. *Strickland*, 466 U.S. at 692-94. Although "[p]rejudice is possible . . . where counsel failed to provide accurate advice regarding a plea agreement", *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000), the record establishes that the defendant consistently maintained his innocence and he would not have pled guilty absent trial counsel's mistake regarding the defendant's career offender status, *see*

*Engelen,* 68 F.3d at 241 (concluding that defendant failed to establish that he would have acknowledged his guilt had he been properly advised). During pre-trial proceedings, trial, post-trial proceedings and direct appeal, the defendant refused to admit guilt. Indeed, even after learning of the fact that he did not qualify as a career offender, the defendant adamantly denied guilt during his sentencing allocution, in post-trial motions and on direct appeal. Thus, the defendant did not establish that, but for trial counsel's error, the result of the plea negotiation process would have been different; the defendant fails to show that trial counsel's conduct prejudiced his defense. *Cf. Chesney v. United States*, 367 F.3d 1055, 1060 (8th Cir. 2004) (finding no error in district court's belief that defendant would not have pled guilty even if the government's pre-trial offer had been communicated); *Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who maintains his innocence at all stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his [collateral] claim that he would have [pled] guilty if only he had received better advice from his lawyer."); *United States v. Stevens*, 149 F.3d 747, 748 (8th Cir. 1998) (rejecting claim that trial counsel provided ineffective assistance because defendant failed to establish reasonable probability that he would have pled guilty if properly advised).[19]

In sum, because he failed to overcome the strong presumption that the conduct of trial counsel fell within a wide range of reasonable professional assistance or show that any deficiencies in trial counsel's performance prejudiced his defense, the defendant's ineffective assistance of counsel claim fails.

---

[19] The court notes that a reduction for acceptance of responsibility under USSG §3E1.1 is not automatic and that eligibility is based on a clear demonstration of guilt.

## 2. *Ineffective Assistance of Appellate Counsel: Improper Admission of a Laboratory Report*

The defendant claims that appellate counsel provided ineffective assistance when he failed to assert on direct appeal a claim regarding the improper admission of a laboratory report. He believes appellate counsel should have raised the error of admitting a laboratory report which identified the substance he distributed as crack cocaine. To support his claim, the defendant relies on *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *United States v. Le*, 272 F.3d 530 (8th Cir. 2001), and *United States v. Riley*, 236 F.3d 982 (8th Cir. 2001). The government resists such claim on the basis that appellate counsel's performance met or exceeded a professional standard of reasonableness and did not prejudice the defendant's defense. In addition, the government argues that the rule announced in *Crawford* is not retroactive, and, therefore, the defendant is unable to rely on it. Finally, the government contends that, if an error occurred, it is harmless.

At trial, the government called DEA Task Force Officer Anthony Robinson to testify and moved to admit into evidence a laboratory report. With respect to such testimony and such evidence, the following colloquy occurred:

> Q. Was anything seized from Mr. Swayze that night?
>
> A. Yes, there was.
>
> Q. What was that?
>
> A. They seized crack cocaine, powder cocaine, currency and a cellular telephone.
>
> . . .
>
> Q. Was the crack cocaine, which is Exhibit 3, and the cocaine, Exhibit 4, seized in this case sent to the laboratory for analysis?

A. Yes, it was.

Q. Which laboratory?

A. It went to the DCI lab in Des Moines.

Q. I am showing you what has been marked as Government Exhibit 5. Do you recognize that document?

A. This is the report given by the DCI lab in Des Moines [that references] this evidence.

Q. Is it also accompanied by a self-authenticating affidavit?

A. Yes, it is.

Q. Who signed that affidavit?

A. Staci Schmeiser.

Q. And who signed the lab report itself?

A. Staci Schmeiser did. She was the criminologist that did the result.

. . .

MS. BAUMANN: The Government moves to admit Government Exhibit 5 into evidence.

THE COURT: Ms. Lilledahl?

MS. LILLEDAHL: No objection, Your Honor.

THE COURT: Government's 5 is admitted without objection.

On direct appeal, the defendant submitted his brief on January 23, 2004, the government filed its brief on March 5, 2004, the Supreme Court decided *Crawford* on March 8, 2004 and the defendant did not file a reply brief.

The defendant's ineffective assistance of counsel claim fails for three reasons. First, appellate counsel is not required to recognize and raise every conceivable constitutional claim. *See Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005)

28

(concluding no constitutional violation occurred when defense counsel failed to raise novel argument based on *Apprendi*, 530 U.S. at 466). Second, newly promulgated rules of criminal procedure generally do not apply to cases on collateral review, *see Evans v. Luebbers*, 371 F.3d 438, 444-45 (8th Cir. 2004) (suggesting that *Crawford* does not appear to be subject to retroactive application on collateral review). Finally, assuming a violation of the Confrontation Clause occurred, any error that occurred is harmless because substantial additional evidence supported the defendant's conviction. *See Middleton v. Roper*, 455 F.3d 838, 857 (8th Cir. 2006) (stating that an alleged violation of the Confrontation Clause is subject to harmless error analysis). Accordingly, the court concludes that no violation of the defendant's constitutional right to effective assistance of counsel occurred; the defendant did not demonstrate that, but for appellate counsel's error, there is a reasonable probability that the result of the trial would have been different. *See Strickland*, 466 U.S. at 689-95.

### 3. Ineffective Assistance of Appellate Counsel: Inadequate Representation During Plea Negotiations by Trial Counsel

The defendant claims appellate counsel provided ineffective assistance when he failed to assert on direct appeal a claim regarding trial counsel's inadequate representation during plea negotiations. For the reasons set forth in part IV(D)(1), the court finds that appellate counsel's failure to raise a futile or frivolous issue cannot constitute ineffective assistance. *Strickland*, 466 U.S. at 689; *see also United States v. Davis*, 406 F.3d 505, 510-11 (8th Cir. 2005) (stating that ineffective assistance of counsel claims are generally raised in collateral proceedings and concluding that appellate counsel did not provide ineffective assistance where no viable appellate claim existed). In addition, the court finds that the defendant did not suffer prejudice in this regard. *Strickland*, 466 U.S. at 692-94. Stated differently, the court must conclude that appellate counsel did not provide

ineffective assistance when he failed to raise during appellate proceedings a claim regarding trial counsel's representation. Because he did not prove either prong of the *Strickland* test, the defendant's ineffective assistance of counsel claim fails.

### E. Certificate of Appealability

In a 28 U.S.C. § 2255 proceeding before a district judge, the final order is subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a defendant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the [defendant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v.*

*McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [defendant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that the defendant failed to make the requisite "substantial showing" with respect to the claims he raised in his 28 U.S.C. § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because the defendant does not present questions of substance for appellate review, there is no reason to grant a certificate of appealability. Accordingly, a certificate of appealability shall be denied. If he desires further review of his 28 U.S.C. § 2255 motion, the defendant may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

## V. CONCLUSION

The defendant's motion for ruling (docket no. 121) is **GRANTED**. The defendant's motion for an evidentiary hearing (docket no. 106) and motion to amend (docket no. 113) are **DENIED**. The court finds all of the defendant's assertions in his 28 U.S.C. § 2255 motion to be without merit. Accordingly, the defendant's motion pursuant to 28 U.S.C. § 2255 (docket no. 105) is **DENIED**. In addition, the court does not believe that appellate review of the defendant's claims is warranted, and, therefore a certificate of appealability

is **DENIED**.

      **IT IS SO ORDERED.**

      **DATED** this 28th day of March, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA